# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **MICHAEL HINTZ and JARVIS JERNIGAN, JR.** | **PLAINTIFFS** |
| v. | Civil No. 3:17cv459-HSO-JCG |
| **MAY AND COMPANY, INC. d/b/a VETERANS CAB TAXI SERVICES** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION [17] FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [17] for Partial Summary Judgment filed by Plaintiffs Michael Hintz and Jarvis Jernigan, Jr. Plaintiffs are two friends who have both been diagnosed with multiple sclerosis ("MS"). On three separate instances, Plaintiffs sought to use the wheelchair accessible services of Defendant May and Company, Inc., doing business as Veterans Cab Taxi Services ("Veterans Cab"). Plaintiffs allege that Veterans Cab denied them the full and equal enjoyment of its services and failed to make reasonable modifications to their policies and practices to accommodate Plaintiffs, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Mississippi's deceptive advertising law, section 97-23-3 of the Mississippi Code.

Plaintiffs now move for partial summary judgment on their ADA claims and the merits of their claim for deceptive advertising, reserving for trial the amount of damages on the second claim. The Motion has been fully briefed. Based upon its review of the record and relevant legal authority, the Court finds that Plaintiffs'

Motion should be denied.

## I. BACKGROUND

A.   Factual Background

   1.   The Parties

Plaintiff Michael Hintz was diagnosed with MS in February 2003. Hintz Aff. [17-1] ¶ 3. Hintz attests that he is substantially impaired in several major life activities such as walking and standing, *id.*, and thus relies on a wheelchair for mobility, *id.* Plaintiff Jarvis Jernigan, Jr., is friends with Hintz. *Id.* The two met through the National MS Society. *Id.* Jernigan was diagnosed with MS in February 1996, Jernigan Aff. [17-2] ¶ 3, and like Hintz, he suffers from substantial impairment in activities including walking and standing, *id.* Jernigan relies on a powered wheelchair or scooter for mobility. *Id.* Hintz and Jernigan do not drive, but rely on public and private transportation services, and sometimes obtain transportation from friends or family. *Id.* ¶ 6; Hintz Aff. [17-1] ¶ 5.

Veterans Cab is a small business operating in Jackson, Mississippi, that offers taxi services for both impaired and unimpaired individuals. Mayo Aff. [22-1] ¶ 3. Veterans Cab has a fleet of five vehicles, Mayo Aff. [22-1] ¶ 3, one of which is a wheelchair accessible van. *Id.* The drivers for Veterans Cab are independent contractors who each set their own schedule and decide when and if they are able to respond to a call. *Id.* Veterans Cab contracts with four drivers, Def.'s Resp. to Pls.' First Set of Interrogs. [17-3] at 2, and currently has two drivers who are trained to operate the wheelchair accessible van, Def.'s Mem. [23] at 1.

Veterans Cab attests that although the business is open 24 hours a day, there are times when service is not available, or when there may be a delay in pick up, whether the customer is impaired or not. Mayo Aff. [22-1] ¶ 3. Veterans Cab further asserts that it does not have the capacity to have a cab ready to pick up a customer at a moment's notice. *Id.* ¶ 8. Because Veterans Cab is not a contracted provider for pick up services at the Jackson Airport, it only services the Jackson Airport by appointment. *Id.* ¶ 6. Because a driver must request and pay for a badge in order to pick up from the Jackson Airport, *id.* ¶ 4, not every driver obtains one due to the expense involved, *id.*

2. <u>March 11, 2016 Incident Involving Jernigan</u>

Jernigan alleges that on or about March 11, 2016, he called Veterans Cab to place a reservation for an accessible taxi to drive him to the Jackson Airport in the early morning of March 14, 2016. Jernigan Aff. [17-2] ¶ 8. Jernigan states that he had seen Veterans Cab's advertisement that it offered 24-hour accessible transportation services, *id.*, and alleges that a Veterans Cab dispatcher informed him that it had only one wheelchair accessible vehicle, only one driver for that vehicle, and that the driver was not available in the early morning of March 14, 2016, to take Jernigan to the airport, *id.* ¶ 9. Veterans Cab attests that at the time of this March 11, 2016 call, the wheelchair van was not available to anyone, whether impaired or unimpaired, at that time of the morning for a trip to the Jackson Airport. Mayo Aff. [22-1] ¶ 5.

3

3. January 15, 2017 Incident Involving Both Plaintiffs

In January 2017, Hintz and Jernigan traveled out of state and returned to Jackson on January 15, 2017, arriving at the Jackson Airport at approximately 3:30 p.m. Jernigan Aff. [17-2] ¶ 11. Jernigan saw several taxis at the airport, but none were wheelchair accessible. *Id.* Jernigan alleges that an airport administrator called Veterans Cab at approximately 4:35 p.m. to reserve an accessible taxi for Hintz and Jernigan, *id.*, but that he was told that the Veterans Cab accessible taxi would not arrive at the airport until at least 5:30 p.m., *id.* At around 5:45 p.m., Plaintiffs learned that the Veterans Cab accessible taxi could not arrive at the airport until 6:30 p.m. *Id.* Plaintiffs then made alternative arrangements for transportation. *Id.*

Veterans Cab attests that during this call, all of its cabs were busy on other routes, Mayo Aff. [22-1] ¶ 6, and that once a driver was able to finish the other calls, a driver would have been able to pick up Plaintiffs from the Jackson Airport, *id.* According to Veterans Cab, this would have been the same situation had an unimpaired individual called for service at that time, but Plaintiffs did not want to wait. *Id.*

4. May 14, 2017 Incident Involving Hintz

On May 14, 2017, Hintz called Veterans Cab at approximately 5:30 p.m. to request an accessible taxi to drive him home from the hospital. Hintz Aff. [17-1] ¶ 8. Hintz alleges that he was initially told by the dispatcher that a driver was not available for the accessible taxi, though the dispatcher called him back a few

4

minutes later to advise that it would be at least 30 minutes before the accessible taxi could pick him up. Id. Hintz believed that such wait time was unreasonable, and made alternative transportation arrangements. Id.

Veterans Cab contends that during the May 14, 2017 call, all cabs were busy on other routes, Mayo Aff. [22-1] ¶ 7, and that once a driver was able to finish the other calls, a driver could have picked up Hintz from the hospital, id. Veterans Cab maintains that this would have been the same situation had an unimpaired individual called for service at that time. Id.

B.     Procedural History

On June 7, 2017, Plaintiffs filed a Complaint [1] in this Court against Veterans Cab, asserting that based upon the incidents of January 15, 2017, and May 14, 2017, Veterans Cab violated the ADA because Plaintiffs were denied the full and equal enjoyment of Veterans Cab's transportation services. Compl. [1] at 5-6. Plaintiffs allege that Veterans Cab treated Plaintiffs differently than other individuals in its response times and hours and days of service, id. at 7, and that Veterans Cab violated the ADA by failing to make reasonable modifications in its procedures to afford services to individuals with disabilities, such as failing to employ an adequate number of drivers capable of driving the van during all hours of operation, id. at 6-7.

Count II of the Complaint advances a claim for violation of Mississippi's deceptive advertising law, section 97-23-3 of the Mississippi Code. Compl. [1] at 8-9. The Complaint alleges that when Jernigan called Veterans Cab on March 11,

2016, to reserve an accessible van, he did so in reliance on the company's representations on its website regarding the availability of its accessible taxi services. *Id.* at 8-9.

The Complaint seeks an injunction declaring that Veterans Cab is violating the ADA and ordering Veterans Cab to modify its policies and procedures to bring them within compliance of the ADA. *Id.* at 9-10. Plaintiffs also pray for attorneys' fees and damages on behalf of Jernigan for Veterans Cab's deceptive advertising practices. *Id.* at 10.

On March 22, 2018, Plaintiffs filed a Motion [17] for Partial Summary Judgment[1] that Veterans Cab is in violation of the ADA by denying wheelchair users the full and equal enjoyment of its public transportation services. Mot. [17] at 1; Pls.' Mem. [18] at 17-18. Plaintiffs contend that on March 11, 2016, Jernigan was denied service on the basis of his disability when service would have been provided to an able-bodied customer.[2] Pls.' Mem. [18] at 17. Plaintiffs further argue that they were offered a disparate level of service on January 15, 2017, and May 14, 2017, by having to endure longer and unreasonable wait times for service. *Id.* at 17-18. Plaintiffs also request summary judgment that Veterans Cab is in violation of the ADA by failing to make reasonable modifications to its procedures in such a way as to ensure that its accessible van is in service during all hours of

---

[1] Plaintiffs had also moved for summary judgment that Veterans Cab violated Mississippi's deceptive advertising statute based upon its failure to provide 24-hour wheelchair accessible service as advertised. After Veterans Cab filed its Response, Plaintiffs conceded that Veterans Cab had raised a genuine issue of material fact on this claim, precluding summary judgment. Rebuttal [25] at 6. Therefore, the Court need not address this issue.
[2] While Plaintiffs assert in their Motion for Partial Summary Judgment that this March 11, 2016 incident constitutes an ADA violation, Plaintiffs' Complaint did not allege this incident as an ADA violation, and only asserted that this incident constituted a violation of Mississippi's deceptive advertising law. Compl. [1] at 4-9.

operation, and by failing to train an adequate number of drivers to operate the wheelchair accessible van. *Id.* at 20.

Veterans Cab responds that it has not committed unlawful discrimination under the ADA because it did not deny services to Plaintiffs based on their impairments, Def.'s Mem. [23] at 13, but rather, during these incidents, no driver was available and Veterans Cab does not have the capability to pick up a customer at a moment's notice, *id.* at 14. With regard to Plaintiffs' argument that Veterans Cab has failed to make reasonable modifications to its policies and practices, Veterans Cab contends that Plaintiffs' requested modifications would fundamentally alter the nature of its services and would put the company out of business. *Id.* at 15-16.

## II. DISCUSSION

A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th

Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.  Analysis

   1.  The ADA

Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), including in the realm of public transportation services supplied by a private entity, *id.* § 12184(a). Though Plaintiffs' ADA claims in this case are brought solely under the latter provision of the statute, case law interpreting public accommodations claims offers helpful guidance in analyzing Plaintiffs' public transportation services claims because the wording of the public accommodations provision of Title III closely resembles that of the public transportation provision. *Compare* 42 U.S.C. § 12182(a) (prohibiting discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation") *with id.* § 12184(a) (prohibiting discrimination "in the full and

equal enjoyment of specified public transportation services"). And "similar language in similar statutes should be interpreted similarly." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 756 (5th Cir. 2015) (citations omitted).

"Disability" under the ADA can include "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), including walking and standing, *id.* § 12102(2)(A). Both Plaintiffs attest that they have been diagnosed with MS, are substantially impaired in several major life activities such as walking and standing, and rely on a wheelchair or scooter for mobility. Hintz Aff. [17-1] ¶ 3; Jernigan Aff. [17-2] ¶ 3. Veterans Cab does not dispute that both Plaintiffs have disabilities that fall under the ADA's protections. Def.'s Mem. [23] at 9. Veterans Cab also does not dispute that it is subject to 42 U.S.C. § 12184(a), which covers "specified transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce," as Veterans Cab is a private entity providing transportation in the Jackson metropolitan area. Def.'s Mem. [23] at 12.

2. <u>Plaintiffs Have Standing to Pursue This Case</u>

As a threshold issue, Plaintiffs assert that they have standing to pursue their ADA claims. Pls.' Mem. [18] at 11. To have standing under Article III of the United States Constitution, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336, 339 (5th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*,

9

136 S. Ct. 1540, 1547 (2016)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 340 (quoting *Spokeo*, 136 S. Ct. at 1548).

Title III of the ADA limits a plaintiff "to injunctive relief, and a restraining or other similar order." *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (citing 42 U.S.C. § 12188). "Standing for injunctive relief requires a threat of present or future harm to the plaintiff." *Deutsch*, 721 F. App'x at 340 (citation and quotation marks omitted). Mere "some day intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the actual or imminent injury." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).

Here, Plaintiffs have alleged that Veterans Cab has violated the ADA and that Veterans Cab will not make Plaintiffs' requested modifications. Hintz attests that he lives in Jackson, does not drive, and intends to attempt use Veterans Cab's services in the future "to run errands, attend community meetings, reach medical appointments, access medical services, engage in recreational activities, and to participate in civic engagements." Hintz Aff. [17-1] ¶ 11. Jernigan alleges that although he lives in Memphis, Tennessee, he intends to regularly return to Jackson "several times per year in order to visit family and friends, to maintain business relationships, and to continue [his] advocacy work." Jernigan Aff. [17-2] ¶ 14. Specifically, Jernigan states that he will return to Jackson at least once per month

for follow-up health care. *Id.* ¶ 4. He further intends to use Veterans Cab's services "to run errands, attend community and business meetings, reach medical appointments, access medical services, and engage in recreational activities." *Id.* ¶ 15.

Veterans Cab argues that Plaintiffs do not have standing because it did not discriminate against them and Plaintiffs' requested modifications are unreasonable. Def.'s Mem. [23] at 10-12. These arguments, however, go to the merits of Plaintiffs' claims, not their standing to pursue them. Plaintiffs' allegations demonstrate that they have standing to pursue this case.

    3.    <u>Plaintiffs' Claim under the ADA for Violation of Full and Equal Enjoyment of Transportation Services</u>

42 U.S.C. § 12184 states, in relevant part:

**(a) General rule**
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

**(b) Construction**
For purposes of subsection (a) of this section, discrimination includes–
. . . .
    (2) the failure of such entity to–

    (A) make reasonable modifications consistent with those required under section 12182(b)(2)(A)(ii) of this title[.]

42 U.S.C. § 12184.

Plaintiffs claim that Veterans Cab has violated 42 U.S.C. § 12184(a). Plaintiffs argue that during the March 11, 2016 incident, Jernigan was denied "the

11

full and equal enjoyment of" Veterans Cab's services because "service would have been provided to an able-bodied customer under otherwise *identical* circumstances." Pls.' Mem. [18] at 17 (emphasis added). Plaintiffs also contend that during the January 15, 2017 and May 14, 2017 incidents, Veterans Cab denied them the full and equal enjoyment of its services by offering a disparate level of service. *Id.* at 17-18.

In analyzing the Title III public accommodations statute, the Fifth Circuit has opined that the statute's prohibition on discrimination against an individual "in the full and equal enjoyment of the goods and services" means owners are prohibited from "denying the disabled access to, or interfering with their enjoyment of, the goods and services of a place of public accommodation." *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000). However, the court found that a strained construction of "full and equal enjoyment" would mean "that the disabled must be able to enjoy every good and service offered to the same and identical extent as those who are not disabled." *Id.* at 187. The Fifth Circuit rejected such a reading because it is "plainly unrealistic," "surely unintended," and "makes an unattainable demand." *Id.* The court acknowledged that "in many, if not most, cases, the disabled simply will not have the capacity or ability to enjoy the goods and services of an establishment 'fully' and 'equally' compared to the non-disabled." *Id.*

The court's rejection of this construction of discrimination against an individual "in the full and equal enjoyment" of services comports with the structure of 42 U.S.C. § 12184. While § 12184(a) sets forth the general rule, Congress

12

included subsection (b) to advance the construction of subsection (a). Thus, discrimination for purposes of § 12184(a) includes the failure to "make *reasonable* modifications" to an entity's policies, procedures, and practices. *Id.* § 12184(b)(2)(A) (emphasis added). The statute only requires reasonable modifications and does not require entities to "make any and all possible accommodations that would provide full and equal access to disabled patrons." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012). In other words, an entity is not required to provide full and equal access if doing so would require an unreasonable modification to the entity's policies, practices, and procedures.

To construe 42 U.S.C. § 12184(a) as Plaintiffs suggest, that is to require in all circumstances the identical enjoyment of transportation services, would render meaningless the statute's limitation of modifications to those that are "reasonable." An entity attempting to comply with such an interpretation would be bound to make any modifications – reasonable or not – necessary to provide identical enjoyment of services. This would fail to give effect to the statute's limitation to reasonable modifications. *Cf. Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed.").

Within the context of this authority, Plaintiffs have not shown the lack of a genuine dispute of material fact that Veterans Cab violated 42 U.S.C. § 12184(a).

13

According to Veterans Cab, when Plaintiffs called for service on January 15, 2017, and when Hintz called for service on May 14, 2017, all cabs were busy on other routes, and a driver would have been available once a driver finished the other calls. Mayo Aff. [22-1] ¶¶ 6-7. Veterans Cab attests that this "would have been the *same* situation had an unimpaired individual called for service at that time." *Id.* (emphasis added). Assuming the truth of these assertions, as the Court must for purposes of this Motion because Veterans Cab is the nonmoving party, Plaintiffs have not shown as a factual matter that Veterans Cab failed to provide Plaintiffs the full and equal enjoyment of its transportation services.[3] Indeed, Plaintiffs acknowledge in their Rebuttal that Veterans Cab has raised "issues of material fact as to the reasons underlying the 2017 unreasonable wait times." Rebuttal [25] at 5 n.8.

While it appears undisputed that the wheelchair accessible van was not available to Jernigan for the early morning of March 14, 2016, when he called on March 11, 2016, to place a reservation, Plaintiffs have not shown beyond dispute that this single incident of unavailability at a requested time rises to the level of an ADA violation. Summary judgment on this claim would not be appropriate.

    4.    <u>Plaintiffs' Claim for Failure to Make Reasonable Modifications</u>

42 U.S.C. § 12184(b)(2)(A) provides that discrimination under the ADA includes the failure of a private transportation entity to "make reasonable

---

[3] Moreover, a district court has held that "[t]he inconvenience of waiting for a taxi does not adequately plead a violation of the ADA." *Poldberg v. 5 Star Flash, Inc.*, No. 11 C 3194, 2011 WL 6097990, at *3 (N.D. Ill. Dec. 1, 2011).

14

modifications consistent with those required under section 12182(b)(2)(A)(ii)." 42 U.S.C. § 12182(b)(2)(A)(ii), in turn, states that discrimination includes:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

42 U.S.C. § 12182(b)(2)(A)(ii).

Under a Title III reasonable modifications claim, "[t]he plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable. The plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases." *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997).

If a plaintiff carries this burden, the defendant must make the requested modification unless the defendant demonstrates that the requested modification would "fundamentally alter the nature of the public accommodation." *Id.* (footnote omitted). To establish this defense, the defendant must put forth evidence that "focuses on the specifics of the plaintiff's or defendant's circumstances and not on the general nature of the accommodation." *Id.* at 1059-60. "[T]he determination of what constitutes a reasonable modification or accommodation is a fact-intensive question ill-suited for resolution at the summary judgment stage." *Powers v. MJB Acquisition Corp.*, 993 F. Supp. 861, 868 (D. Wyo. 1998).

Plaintiffs argue that Veterans Cab violated the ADA by failing "to modify its policies and procedures in such a way as to ensure that its accessible taxi is in service during all hours of operation." Pls.' Mem. [18] at 20. As part of this modification, Plaintiffs request that Veterans Cab train all of its drivers to be able to operate the wheelchair accessible van. Plaintiffs take the position that while Veterans Cab has four drivers, two of whom are trained to operate its wheelchair accessible van, ADA compliance requires Veterans Cab to ensure all of its drivers are trained in the operation of its wheelchair accessible van. Rebuttal [25] at 2.

In support of this position, Plaintiffs rely on ADA regulation 49 C.F.R. § 37.173, which requires a private entity operating a demand responsive system to

> ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.

49 C.F.R. § 37.173.

This regulation is limited to ensuring that training is conducted "as appropriate" to the personnel's duties, and Plaintiffs have not shown beyond dispute why it is appropriate to mandate that all drivers for a small company be required to operate a wheelchair accessible van.

More broadly, Plaintiffs have not carried their burden of showing the absence of a genuine dispute of fact that requiring all of a company's taxi drivers to be trained in operating wheelchair accessible vans "is reasonable in the general sense, that is, reasonable in the run of cases." *Johnson*, 116 F.3d at 1059. Whether the

16

requested modification would be reasonable given that, in regards to a similar issue, the ADA regulations state that "[a] provider of taxi service is not required to purchase vehicles other than automobiles in order to have a number of accessible vehicles in its fleet," highlights the factual nature of the inquiry. 49 C.F.R. § 37.29(b); *see also Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006) ("The ADA does not mandate that all private transportation entities provide accessible vehicles – a taxi fleet consisting entirely of non-accessible vehicles would be in accord with the ADA.").

Plaintiffs also contend that Veterans Cab has failed to comply with another ADA regulation, 49 C.F.R. § 37.103(c), which provides:

> If the entity operates a demand responsive system, and purchases or leases a new vehicle other than an automobile, a van with a seating capacity of less than eight persons (including the driver), it shall ensure that the vehicle is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the system, when viewed in its entirety, meets the standard for equivalent service of § 37.105 of this part.

49 C.F.R. § 37.103(c).

Plaintiffs have not shown beyond dispute that Veterans Cab purchased or leased a vehicle other than an automobile or van seating less than eight persons, and therefore, it is not clear whether this provision even applies to Veterans Cab. Furthermore, it is not clear that "readily accessible," as that term is employed, demands being available for use during all hours of operation. "Accessible means, with respect to vehicles and facilities, complying with the accessibility requirements of parts 37 and 38 of this title." 49 C.F.R. § 37.3. According to 49 C.F.R. § 37.7, a

17

vehicle is generally considered to be "readily accessible" if it meets the standards set forth in 49 C.F.R. § 38.23, which is titled, "Mobility aid accessibility," and sets out the accessible requirements for vans. 49 C.F.R. § 38.23 outlines the specifications for the vans' lift, ramp, and securement devices, but does not address the hours of service or availability of such a vehicle. Summary judgment should be denied on this point.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiffs' Motion [17] for Partial Summary Judgment is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 18th day of June, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE